YOUNG & POMEROY v. Executors, etc., of ALFRED B. NOBLE.

(No. 7,178.)

Y. & P. received from the owner a bill of exchange, upon an agreement that, without commission or reward, they would send the bill to the place where payable, for collection, and pay to the owner the whole proceeds of the paper when collected. Afterward the bill was paid to the bank to which it was sent, and, by direction of Y. & P., placed to their general account; but before the money was drawn by Y. &. P., the bank failed.

*Held:* That the undertaking, though gratuitous, yet having been made and entered upon by the receipt of the bill, and its transmission to N. Y. for collection, was a sufficient consideration to support the agreement. That the depositary in New York became, by the deposit of the bill, the agent of Y. & P., and the proceeds, when paid to him, were, for all legal purposes, in the hands of the principals. That the proceeds of the bill being credited to Y. & P., in the general account, became thereby their sole property, and they were liable to the owner for the proceeds of the bill.

GENERAL TERM.—Proceeding in error to reverse a judgment given in favor of the defendant's testator against the plaintiffs in error, at special term, upon the following facts, as stated in the bill of exceptions filed in the case:

On the 18th of August, 1857, B. F. Elder, acting as the agent of Noble, was in possession of two bills of exchange, the one drawn on the 8th of August, at Leavenworth, Kansas Territory, by Isett Brewster & Co., on John Thompson, New York, payable to the order of Elder, at sight, for $742 50; the other bill bore the same date and was drawn by Adams, Swift & Co., on R. C. Altine, New York, payable to the order of Elder, fifteen days after date, for $700. Both bills were the property of Noble, and were brought by Elder to Cincinnati where Young & Pomeroy, the plaintiffs in error, resided. While in the city, Elder called upon a person who was a clerk in the house of Young & Pomeroy, and asked his aid in collecting the bills, who introduced him to Pomeroy, one of his employers. A conversation ensued which terminated in the agreement between the parties,

that Young & Pomeroy should take the bills and send them to New York for collection, paying the proceeds to the owner here, whenever the bills should be paid there. It was well understood at the time, that Young & Pomeroy transacted their business in New York, at the agency of the Ohio Life Insurance and Trust Company, of which E. Ludlow was the cashier, and the bills were to be sent there for collection. They were accordingly indorsed by Elder, and delivered to Young & Pomeroy, who also indorsed them, and on the same day transmitted them to Ludlow, by letter, of which the following is a copy:

CINCINNATI, Aug. 18, 1857.

EDWIN LUDLOW, Esq., Cashier—*Dear Sir:* Enclosed please find Isett Brewster & Co's sight draft on John Thompson, N. Y., for seven hundred and forty-two dollars and fifty cents. Also, Adams, Swift & Co.'s draft, fifteen days after date, 8th of August, for seven hundred dollars on R. C. Altine, 15 Wall street, N. Y. You will please collect them both and place the amount to our credit. If not paid, protest, and let us know as soon after as possible.

We are respectfully,

YOUNG & POMEROY.

On the 21st August, 1857, the bills were received by Ludlow, and on the same day the one drawn on Thompson for $742 50 was paid, and the proceeds entered to the credit of Young & Pomeroy, at the agency of the Ohio Life Insurance & Trust Company. The other draft for $700 was protested when it became due, for non-payment.

On the 24th August, the agency referred to, closed its doors being unable to meet its engagements, and on the 25th the principal institution in Cincinnati also failed to pay and was insolvent. No part of the proceeds of the draft paid by Thompson, had been realized by Young & Pomeroy, and the whole amount remained a debt against the trust company. The other draft was returned.

It appears that Young & Pomeroy were not to receive

any commission for their services in collecting the bills, and the difference of exchange was to be allowed to Noble whenever they were paid.

On this evidence, Judge Gholson, at special term, the case having been submitted to him, found that Young & Pomeroy were liable to pay the proceeds of the Thompson draft which had been passed to their credit in New York, and rendered judgment accordingly.

*Coffin & Mitchell*, for plaintiffs in error.

*W. M. Dickson*, for defendants in error.

STORER, J., delivered the opinion of the court.

In deciding the case, the judge below determined the law, as well as the fact, so that both questions are now fairly presented on the record before us.

We have carefully examined the evidence upon which the judgment was rendered, and are of opinion there is no error in the ruling of the court at special term. The undertaking of the plaintiffs in error, though gratuitous, yet, having been made and entered upon, by the receipt of the bill, and its transmission to New York, for collection, were a sufficient consideration to support the agreement, and though the liability can not be said to be as great as that which would attach to a bailee for reward, there is nevertheless a well defined obligation, in all such cases, imposed by the law. The limitation is, that the party undertaking to act for another, under such circumstances, is responsible for positive neglect, in the discharge of his duty, depending upon the nature of the bailment assumed, and the peculiar circumstances which must naturally attend it. In other words, good faith requires he should be bound to use reasonable care, depending upon the nature and quality of the thing, the manner in which the duty is to be performed. Story on Bailments, sec. 62; 1 Jac. & Walker, 241, *Massey* v. *Banner*.

Having ascertained the relation subsisting between the parties, two questions are presented, both of which, we think, must be resolved against the plaintiffs in error.

*First*. Was the depositary in New York, to whom the bills were sent for collection, the agent of Young & Pomeroy, or Noble? If of the former, the proceeds, when paid to the agent, were paid to the principal, and the liability against him is perfect.

It was held in 22 Wend. 215, 244, *Allen* v. *Merchants' Bank of New York*, "that when a bank receives, upon a good consideration, a note or bill for collection, in the place of their business, or at a distant place, the party receiving the same for collection is liable for the neglect, omission or other misconduct of the bank or agent, to whom the note or bill is sent, either in the negotiation, collection or paying over the money, by which the money is lost, or other injury sustained by the owner of the note or bill, unless there be some agreement to the contrary, express or implied."

This ruling was, by a divided court in error, in 1839, but it was affirmed in 8 Barbour, 396, *Montgomery Co. Bank* v. *The Albany City Bank*, decided in 1850. The same principle was asserted in 19 Barbour, 395, *Com. Bank of Pa.* v. *Union Bank of N. Y.*, and affirmed in the same case in error, by the whole court, in 1 Kernan, 211.

We adopt the law as we find it thus decided, as the only safe and just rule, in this class of cases.

Here the agency of the trust company, where Young & Pomeroy had for a long time kept their account, became, by the deposit of the bills, their agent to collect and pay over the proceeds to their order. The letter inclosing the bill, directed the avails should be placed to the credit of Young & Pomeroy. No intimation is given that they are held in trust, or that any other person than the customers of the bank, who have forwarded the drafts, were the owners. The legal title was transferred by the indorsement of Elder to Young & Pomeroy, and by their indorsement to Ludlow as cashier, who was thus vested with the right to receive

payment, and pass the amount, when in cash, to the credit of the last indorser, and no other person.   He must, therefore, be regarded as the agent of Young & Pomeroy, and when the bills were paid to him, the proceeds were, for all legal purposes, in the hands and under the control of the principals.   The necessary result is, the defendants in error might well claim from their agents here, the amount paid in New York.

The second point, it appears to us equally with the first, was properly decided against the plaintiffs in error.

It is admitted, the proceeds of the bill paid by Thompson, were credited to Young & Pomeroy, in their general account, and became, thereby, their sole property.   There was nothing to distinguish the ownership in the amount from the other items of credit, nor had the depositors noticed that any difference, in reality, existed.   The cash received was practically mingled with the other moneys of Young & Pomeroy, and thereby became confounded with their own, subject to their sole order, and to be drawn only on their own check.

In such cases we find the rule is plainly established by an uninterrupted course of adjudications in equity as well as at law.

In 11 Ves. 378, *Wren* v. *Kirton*, the chancellor charged upon a trustee a loss occasioned by the failure of the banker to whom trust money had been intrusted and credited to the trustee's private account.   So in 1 Jac. and Walker, 241, *Massey* v. *Banner*, a gratuitous agent was held responsible for a loss occurring under similar circumstances.   Lord Eldon remarked in this case, "if an assignee pays money into his banker's hands, as money belonging to the estate, and the banker fails, the assignee is undoubtedly clear from the loss; but if, instead of distinguishing it, he pays it all into his own account, then it is his account there; there is nothing like a declaration of trust of it, and it is familiar to consider him as having it in the banker's hands for himself, making him liable for it—the account is with the banker and the depositary."—p. 248.

So in *Fletcher* v. *Walker*, 3 Madd. 46; *Macdonnell* v. *Harding*, 7 Simons, 178; *Brown* v. *Rickets*, 4 John. Ch. 303: Chancellor Walworth, in 1 Paige, 402, *Case* v. *Abeel*, says : "Executors and trustees must be made to understand that it is their duty to keep trust funds separate and distinct; that they should, upon no consideration, use the trust money themselves, or permit it to be mingled with their own. If they neglect this obvious duty they have no reason to complain if they meet with trouble and expense and sometimes with heavy loss."

See also 2 Car. & Payne, 59, *Robinson* v. *Ward*, where it was. held an attorney was liable for the loss of his client's money, collected by him and paid to his own account with his banker, who afterward failed. It would have been otherwise if he had opened an account in his own name, for the benefit of his client.

We see no difference in principle in the case before us, and those we have referred to, where the law is so clearly stated, and its policy so ably vindicated.

On the whole case we are satisfied the judge committed no error, and his judgment must be affirmed.

Judgment affirmed.